UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK ANDY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4: 13 CV 2150 CDP |
| | ) | |
| HEAT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Mark Andy makes printing press equipment. Heat Technologies builds dryers for printing presses. In 2013, Mark Andy hired Heat Technologies to make a custom dryer system for a printing press it was building for third-party customer CL&D. The dryer system was delivered and installed, but Mark Andy alleges it never worked properly. This lawsuit followed. In the second amended complaint, Mark Andy brings claims for breaches of contract and warranties (express and implied) against Heat Technologies relating to the functionality of the dryer system. Heat Technologies brings counterclaims for breach of contract.

Before me now are cross-motions for partial summary judgment. The parties want me to decide as a matter of law which contract terms control the present dispute. Because genuine disputes of material fact remain as to when a contract was formed and what terms were included in the contract, I must deny all

pending motions for the reasons stated below.

## Standards Governing Summary Judgment

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *ASi Industries GmbH v. MEMC Electronic Materials, Inc.*, 2008 WL 413819, *1 (E.D. Mo. Feb. 13, 2008).

## Background Facts[1]

On January 2, 2013, Bruce Murphy of Mark Andy sent an email to Gene Plavnik of Heat Technologies requesting a bid for the CL&D dryer system. To

---

[1] I set out these facts only for the purpose of deciding the summary judgment motions. Neither party may rely on this Memorandum and Order to establish any fact or defense at trial.

accurately prepare a bid, Heat Technologies first asks potential customers to provide it with specific information about the project. Murphy did this by completing Heat Technologies' Design Criteria Form and including it as an attachment to his email.

On January 26, 2013, Heat Technologies sent a proposal for the dryer system to Mark Andy ("the Proposal"). The Proposal is attached as Exhibit 1 to the second amended complaint. The Proposal states that it is an "offer" that will remain open for 30 days and contains specifications for the dryer system, purchase price ($292,700.00), payment terms (three payments per specified events), and shipping (FOB Atlanta). The Proposal also contains written warranties titled "Performance Warranty," "Limited Equipment Warranty," and "Limited Component Warranty." The Proposal states that these warranty obligations "expire immediately and completely if there are any alterations to the equipment during the warranty period." The Proposal also disclaims any other express and implied warranties not set out in the Proposal and excludes consequential and other damages and remedies to the extent allowed by Georgia law. Plavnik sent the Proposal to Murphy as an attachment to an email which notes that "[the Proposal] has a clause of performance warranty."

On January 30, 2013, Mark Andy issued a purchase order to Heat Technologies for the purchase of the CL&D dryer system ("Purchase Order"). The

Purchase Order is attached as Exhibit 2 to the second amended complaint. The Purchase Order incorporates by reference Mark Andy's "Standard Terms and Conditions," which are available online. It further states that "SELLER AGREES THAT THIS PURCHASE ORDER WILL BE GOVERNED BY SUCH STANDARD TERMS AND CONDITIONS . . . BY SELLING GOODS/SERVICES TO MARK ANDY, YOU AGREE TO, AND INTEND TO BE BOUND BY SUCH STANDARD TERMS AND CONDITIONS . . . ." Mark Andy's Standard Terms and Conditions include the following provision:

> Acceptance of this Order is expressly made conditional on assent to the terms, provisions and conditions of this Order which cannot be altered by the shipment or receipt of any Goods contemplated by this Order . . . Seller's shipment of the Goods or its execution of the acknowledgment copy of this instrument shall constitute acceptance of all of the terms, provisions and conditions herein set forth, and said terms, provisions and conditions shall constitute the entire contract between the parties, no additional or different terms, provisions or conditions contained in a written expression or confirmation of acceptance by Seller shall become a part of the contract even though such expression or confirmation of acceptance states that it is expressly made conditional on assent to such additional or different terms, provisions or conditions.

The Standard Terms and Conditions state as follows with respect to warranties:

> In addition to any warranty implied by fact or law, Seller expressly warrants that the Goods covered by this Order are free from defects in design, materials and workmanship, conform strictly to specifications, drawings and samples, if any, are fit and sufficient for the purpose intended, are merchantable, do not infringe on any patent, trademark, copyright or other intellectual property right of any third party, and are conveyed to Buyer free and clear of all liens, claims and encumbrances . . . Acceptance of this Order shall constitute an

4

agreement upon Seller's part to indemnify and hold Buyer harmless from liability, loss, damage and expenses, including special, incidental and consequential damages, and including reasonable counsel fees, incurred or sustained by Buyer by reason of the failure of the Goods to conform to such warranties or by reason of the negligence or willful misconduct by Seller . . . Such indemnity shall be in addition to any other remedies provided by law . . . All warranties shall survive inspection, tests, acceptance of and payment by Buyer. In the event of breach of warranty, Buyer may at its option either return for full refund or credit or require prompt correction or replacement of the defective non-conforming Goods . . . In the event Seller refuses to promptly correct the defective or non-conforming Goods . . . Buyer may upon reasonable notice to Seller make the repairs necessary to correct said Goods and charge Seller with the costs of repair.

Page two of the Purchase Order, under "Item/Part Number/Description," states that "this order is defined by the proposal from Heat Technologies, Inc., titled (CL&D Project) dated January 26, 2014. 1 x Spectra HETM Ultra Drying System for 17 web width in line flexographic press, 10 colors per specifications described in proposal noted above." The Purchase Order contains a delivery date and delivery instructions, payment terms (three payments per specified events), shipping terms (FOB Origin) and instructions, billing instructions, and purchase price ($292,700.00). The final payment is "due upon acceptance as per terms of Performance Warranty." "Performance Warranty" is not defined in the Purchase Order or the Standard Terms and Conditions. The only "Performance Warranty" in the record appears in Heat Technologies' Proposal.

Murphy then emailed Plavnik the same day to ask, "Have you receive[d] [the Purchase Order]?" Plavnik responded by email, "Thank you and yes, we have

received the new order and will schedule a conference call with the engineering team within this week. We look forward to continuing to work together." Plavnik testified that after receiving the Purchase Order, he called Murphy "to discuss the purchase order, including the reference to Mark Andy's Terms and Conditions. During my call with Mr. Murphy, I told that him that my understanding of the purchase order was based on [Heat Technologies'] proposal and warranties, not Mark Andy's Terms and Conditions, and asked whether my understanding was correct. Mr. Murphy told me that my understanding was correct." [Doc. #72-1]. Murphy denies this conversation took place. [Doc. #85-1].

On May 11, 2013, Plavnik emailed Murphy and others at Mark Andy to inform them that the dryer system was ready for shipment. He then requested payment of 35% of the purchase price "[a]ccording to the PO *and accepted proposal*" and later stated that the transaction would be completed "*according to accepted proposal* and issued purchase order." (emphasis added). The attached invoice states, "We ship the dryer within two week (or faster) after receiving second payment on the project – *see the proposal*." (emphasis added). Mark Andy paid two invoices and Heat Technologies delivered the dryer system. A dispute then arose about its functionality and this lawsuit was eventually filed.

## Discussion

For summary judgment purposes, the parties agree that Missouri law applies.

Section 2–207 of the Uniform Commercial Code[2] governs transactions for the sale of goods such as the dryer system at issue here. It provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.
>
> U.C.C. § 2–207.

Both parties concede that Heat Technologies' Proposal constituted an offer. There is also no dispute that terms offered by Heat Technologies in its Proposal are "different from" those contained in Mark Andy's Purchase Order. The issue before me is whether Mark Andy's Purchase Order accepted Heat Technologies'

---

[2] As adopted in Missouri, Mo. Rev. Stat. § 400.2-612.

7

offer or constituted a counteroffer. Here, Mark Andy's Purchase Order was not an acceptance of Heat Technologies' offer as set out in the Proposal because of the expressly conditional language contained in the Purchase Order. *PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 979 (8th Cir. 2000) ("[C]reation of a contract [under 2-207(1)] is prevented where acceptance is expressly made conditional on assent to the additional or different terms.") (internal quotation marks and citation omitted). "While an acceptance need not match the exact language of § 2-207(1) to be considered expressly conditional, an acceptance which precisely follows § 2-207(1) clearly forestalls contract formation." *Id.* (internal quotation marks and citations omitted). Here, Mark Andy's Purchase Order tracks the statutory language and states that "acceptance of this Order is expressly made conditional on assent to the terms, provisions and conditions of this Order . . . ." Accordingly, it was not a valid acceptance of Heat Technologies' offer. *See id.*

Mark Andy's Purchase Order, while not a valid acceptance of the Proposal, stands as a non-binding counter-offer. *See Christy Refractories*, 225 F.3d at 979. Because Mark Andy expressly conditioned its acceptance on Heat Technologies' assent to the proposed terms in the Purchase Order, a contract on Mark Andy's terms resulted only if Heat Technologies assented. *See White Consolidated Industries, Inc. v. McGill Manufacturing Co., Inc.*, 165 F.3d 1185, 1191 (8th Cir.

1999).³ Mere performance does not constitute acceptance of all the terms in the counter-offer. *See Christy Refractories*, 225 F.3d at 980. "Instead, specific and affirmative assent to the [] counter-offer is necessary to create a contract." *Id.* Here, evidence of the parties' conduct following Mark Andy's transmittal of the Purchase Order raises genuine issues of material fact as to when a contract was formed and what terms were included in the contract. Mark Andy argues that Plavnik's January 30, 2013, affirmative response to the question of whether Heat Technologies had received the Purchase Order is undisputed evidence of assent to the counter-offer and its terms. Heat Technologies disputes that it assented to the counter-offer and offers the testimony of Plavnik, who avers that after he received the Purchase Order, he called Murphy "to discuss the purchase order, including the reference to Mark Andy's Terms and Conditions. During my call with Mr. Murphy, I told that him that my understanding of the purchase order was based on [Heat Technologies'] proposal and warranties, not Mark Andy's Terms and

---

³ I reject Heat Technologies' circular argument that Mark Andy's Purchase Order was an acceptance, not a counteroffer, because it incorporated the terms of the Proposal into the Purchase Order by describing the system to be purchased as "defined by the proposal from Heat Technologies, Inc., titled (CL&D Project) dated January 26, 2014. 1 x Spectra HETM Ultra Drying System for 17 web width in line flexographic press, 10 colors per specifications described in proposal noted above." A plain and ordinary reading of the Purchase Order is that this provision is meant to identify the item to be built and purchased, not to incorporate all the terms and conditions of the Proposal in its entirety. Heat Technologies' urged interpretation would result in an internally inconsistent document which, for example, bars the recovery of consequential damages in one section while simultaneously permitting them in another. Such a strained reading runs afoul of Missouri law, which requires contracts to be construed so as to give reasonable meaning to each term and to harmonize all provisions. *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 229 (Mo. banc 2013).

Conditions, and asked whether my understanding was correct. Mr. Murphy told me that my understanding was correct." Murphy denies the conversation took place. Plavnik's later emails to Mark Andy refer both to the "accepted proposal" and the "issued purchase order." In addition, Mark Andy's Purchase Order states that final payment is "due upon acceptance as per terms of Performance Warranty." "Performance Warranty" is not defined in the Purchase Order or the Standard Terms and Conditions. The only "Performance Warranty" in the record appears in Heat Technologies' Proposal.[4] In light of this disputed evidence, the Court cannot decide as a matter of law which contract terms control the present dispute. *See ASi Industries GmbH v. MEMC Electronic Materials, Inc.*, 4:06CV951 CDP, 2008 WL 413819, *4-*5 (E.D. Mo. Feb. 13, 2008); *Venmar Ventilation, Inc. v. Von Weise USA, Inc.*, 2009 WL 799610, *11-*12 (D. Minn. Mar. 24, 2009); *Verasun Fort Dodge, L.L.C. v. Industrial Air Technology Corp.*, 2008 WL 5069121, *19-*20 (N.D. Iowa Nov. 25, 2008). Although the parties discuss the gap-filler provisions of § 2-207(3), the Court cannot determine as a matter of law whether, and to what extent, the gap-filler provisions apply here because there is a material dispute as to whether a contract was formed under § 2-207(1). Summary judgment will therefore be denied.

---

[4] Contrary to Mark Andy's argument, the parol evidence rule does not bar consideration of this evidence because it goes to the issue of whether a contract was even formed and, as admitted by the parties, "there is no single signed contract executed by both Parties for the sale and purchase of the drying system at issue." [Doc. #65 at 2].

Accordingly,

**IT IS HEREBY ORDERED** that the motions for partial summary judgment [#71, #78] are denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2015.